IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| S & S TRUCKING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION 09-00715-CG-B |
| | ) | |
| CANAL INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Plaintiff's Motion to Remand (Doc. 15), and Defendants' brief in opposition (Doc. 17). Upon careful review of Plaintiff's motion, and Defendants' brief in opposition, the undersigned **RECOMMENDS** that Plaintiff's Motion to Remand be **GRANTED**.

### I. Background

This case involves a dispute over insurance coverage. Plaintiff S&S Trucking, LLC (hereinafter "S&S Trucking") filed a Complaint in the Circuit Court of Conecuh County on September 28, 2009 against Canal Insurance Company (hereinafter "Canal Insurance"), Deas Insurance Agency (hereinafter "Deas Insurance"), and Dan Wright. (Doc. 1, ps. 32-28). In the Complaint, Plaintiff alleges that S & S Trucking contacted Dan Wright (hereinafter "Wright") and Deas Insurance, agents for Canal Insurance, in order to obtain insurance for multiple power units (tractors) and

trailers operated by S & S Trucking. Plaintiff asserts that Wright and Deas Insurance were advised that coverage was needed for the tractors and trailers, as well as for the trailers and cargo when the trailers were detached from the power units. According to Plaintiff, Defendants agreed to provide the requested insurance; however, when Plaintiff filed a claim following the theft[1] of a trailer and its cargo while detached from a tractor, Defendants refused to honor the claim for the cargo. (Id.)

In Count one of the Complaint, S & S Trucking asserts that by refusing to pay benefits under the policy, Defendants are in breach of the insurance contract. In Count two of the Complaint, S & S Trucking alleges that Defendants negligently failed to include in the application and or policy the "scheduled locations" where the cargo would be covered while on trailers that were not attached to a tractor, negligently failed to include information that cargo should be covered while at scheduled locations, and negligently failed to provide coverage for cargo while on trailers not connected to a tractor at scheduled locations. Plaintiff alleges in Count three of the Complaint that Defendants wantonly failed to include in the application and or policy the "scheduled locations" where the cargo would be covered while on trailers that were not

---

[1] According to Plaintiff, on August 31, 2008, one of its drivers disconnected his tractor from a loaded trailer and left the trailer at Bolton's Service Station. Upon his return, he discovered that the trailer, and its cargo, had been stolen.(Id.)

attached to a tractor, wantonly failed to include information that cargo should be covered while at scheduled locations, and wantonly failed to provide coverage for cargo while on trailers not connected to a tractor at scheduled locations. In Count four of the Complaint, Plaintiff alleges that Defendant Canal engaged in bad faith. In Count five, Plaintiff alleges that Defendants fraudulently misrepresented that the policy would include coverage for cargo when on trailers that were not attached to a tractor, and failed to disclose to Plaintiff, after inquiry, that specific locations had to be included on the declaration page of the insurance policy in order for coverage to exist for cargo while on trailers that were not attached to a tractor. Plaintiff further alleges that Defendants suppressed this material fact, and that Plaintiff purchased the policy in reliance on Defendants' fraudulent misrepresentations. (Id.)

On October 30, 2009, Defendant Canal Insurance filed a Petition of Removal pursuant to 28 U.S.C. § 1332.[2] (Doc. 1). In its petition, Canal Insurance asserts that this Court has federal jurisdiction over Plaintiff's claim based on diversity of citizenship. Defendant further avers that the amount in controversy exceeds $75,000. (Doc. 1 at 4-5). Defendant Canal Insurance acknowledges that complete diversity of citizenship does

---

[2]Defendants Wright and Deas Insurance consented to removal. (Doc. 1, Ex. C)

not exist as Defendants Deas Insurance and Wright and Plaintiff are all citizens of Alabama; however, Canal Insurance argues that Defendants Deas Insurance and Wright have been fraudulently joined because S&S Trucking cannot possibly recover on its state law claims against either party. (Doc. 1 at 6-7). Defendant Canal Insurance submitted the affidavit of Defendant Don Wright in support of its Notice of Removal. (Doc. 1-1, Ex. E). In the affidavit, Wright avers that he is president of Deas Insurance, the independent insurance agency that procured the policy in question, and that neither himself nor Deas Insurance is a party to the policy. Wright also avers that he did not agree to procure coverage for the loss alleged in Plaintiff's Complaint, that Plaintiff never raised with him the issue of procuring insurance for the loss alleged in Complaint, and that neither he nor Deas Insurance played any part in the decision to deny the claim. (Id.)

As noted supra, pending before the Court is Plaintiff's Motion to Remand. (Doc. 15). In the Motion, Plaintiff argues that this case should be remanded because the claims against Defendant Deas and Wright are actionable. In support of its motion, Plaintiff submitted the affidavit of Donald Salter[3]. (Doc. 15-1, Ex. 3) Salter avers that he is president of S & S, and that he contacted Don Wright and Deas Insurance in order to obtain insurance coverage

---

[3]Plaintiff also submitted a second affidavit of Donald Salter in support of its opposition to Defendants' Motion for Summary Judgment (Doc. 20-1).

4

for trucks and trailers operated by S & S Trucking. According to Salter, S & S Trucking already had "bobtail insurance," which provides insurance coverage for cargo and trailers when they are not attached to a tractor, through another carrier. Salter avers that he discussed with Wright that because of the type of loads hauled by S & S Trucking, the drivers for S & S Trucking had a standard location (Bolton's Service Station) to leave a trailer and load when the drivers had to unhook and drive the tractor home. (Doc. 20-1). Salter alleges that Wright and Deas Insurance agreed that "bobtail" coverage was needed, and that Wright and Deas Insurance would procure the necessary coverage for Plaintiff. Salter further avers that he paid the premiums for the insurance, and that the policy was issued by Canal Insurance Company on August 6, 2008; however, he did not receive the policy until a few days before the loss on August 31, 2009. Salter asserts that the policy included a business auto declarations page that included the trailers owned and used by S & S Trucking as scheduled vehicles, and that the entire policy, with all the declarations, endorsements and provisions, consists of approximately 147 pages. According to Salter, at the request of S & S Trucking, Wright and Deas Insurance prepared certificates of coverage for the truck cargo brokers with whom Plaintiff did business, and the certificates listed all trailers owned by S & S as scheduled vehicles and also listed cargo coverage. Salter also asserts that when he filed a claim for loss

5

after a trailer and load that were not attached to a tractor were stolen, Canal insurance paid the claim for the trailer, but denied the claim for the load on the ground that S & S did not have such coverage under the policy procured by Wright and Deas Insurance. (Docs. 15-1, Ex. 3; 20-1).

**II. Statement of the Law.**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441, and therefore must establish the existence of federal jurisdiction. See Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005)("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists")(citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).

Defendants predicate removal of this action on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. See Darden v. Ford Consumer Finance Co., 200 F.3d 753, 755 (11th Cir. 2000)(to qualify for diversity jurisdiction, complaint must establish

"complete diversity of the parties' citizenship and an amount in controversy exceeding $75,000"); Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (llth Cir. 1998). Because "removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999); Newman v. Spectrum Stores, Inc., 109 F.Supp.2d 1342, 1345 (M.D. Ala. 2000)("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear).

"The party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002); see also Triggs, 154 F.3d at 1287 n.4 (11th Cir. 1998); Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007). "Therefore, the burden is on the Defendant to establish complete diversity – that the plaintiff is diverse from the defendant, and that by a preponderance of the evidence, the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement." Id. See also Triggs, 154 F.3d at 1287; Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996; Wallace v. Kentucky Fried Chicken, 2008 U.S. Dist. LEXIS

7

80151, 2008 WL 4531773, (S.D. Ala., Oct. 9, 2008).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. A fraudulently joined non-diverse defendant does not defeat diversity because his citizenship is not considered, and if fraudulent joinder is found, the court "must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." Florence v. Crescent Resources, LLD, 484 F.3d 1293, 1297 (11th Cir. 2007). The Eleventh Circuit employs a tripartite test for determining whether a defendant has been fraudulently joined. The removing party must show either of the following: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant in state court; (2) the plaintiff fraudulently pleaded jurisdictional facts, or (3) that a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several of alternative liability and the claim has no real connection to the claim against the non-diverse defendant. See Triggs, 154 F.3d at 1287. The burden on the removing party to show fraudulent joinder is a "heavy one." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); see also Gonzalez v. J.C. Penney Corp., 209 Fed. Appx. 867, 2006 U.S. App. LEXIS 26178, 2006 WL 2990086, *3(11th Cir. Oct. 20, 2006)("The burden of establishing fraudulent joinder is a heavy one.")

The Eleventh Circuit has cautioned that "[i]f there is even a

8

possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Triggs, 154 F.3d at 1287. Of course, "[t]he potential for legal liability must be reasonable, not merely theoretical". Legg v. Wyeth, 428 F.3d 1317, 1355 n.5 (11th Cir. 2005). Finally, in weighing the parties' respective positions, the Court must determine its jurisdiction over the case "based upon the plaintiff's pleadings at the time of removal," Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983), supplemented by any affidavits or deposition transcripts filed by the parties. "While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination'. . . When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citations omitted).

**III. Analysis**

Plaintiff alleges in the complaint, and argues in the Motion to Remand, that an insurance agent or broker who undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, is liable for any resulting damages. He then

9

argues that such insurance broker can be sued for breach of contract or in tort. Defendant counters that, according to Alabama law, claims for breach of contract and bad faith based on an insurance contract may only be brought against a party to that contract. Pate v. Rollison Logging Equip., Inc., 628 So. 2d 337, 343 (Ala. 1993); Ligon Furniture Co. v. O.M. Hughes Ins., Inc., 551 So. 2d 283, 285 (Ala. 1989); see also Owens v. Life Ins. Co. of Georgia, 289 F. Supp. 2d 1319, 1324 (M.D. Ala. 2003).

In this case, it is alleged that Defendants Deas and Wright, along with Defendant Canal, breached the insurance contract; however, Plaintiff has not alleged, and there is nothing in the record to suggest that either Defendant Deas nor Wright were parties to the contract. Therefore, Plaintiff cannot maintain a cause of action for breach of contract against them. See McDonald v. Integon General Ins. Co., 1996 U.S. Dist. LEXIS 16890 *2, *9(S.D. Ala. Sept. 19, 1996)(holding that even though the agent told Plaintiffs in an initial meeting that they had full coverage if they made premium payments as required in the contract, Plaintiffs did not allege that the agent or the agency were parties to the contract so they could not maintain a cause of action for breach of contract or bad faith against them).

As noted supra, Plaintiff has also asserted wanton and negligence claims against Defendants. Like any negligence claim, a claim in tort alleging a negligent failure of an insurance agent

to fulfill a voluntary undertaking to procure insurance...requires demonstration of the classic elements of a negligence theory, i.e. "(1) duty, (2) breach of duty, (3) proximate cause, and (4) injury. <u>Kanellis v. Pac. Indem. Co.</u>, 917 So. 2d 149, 155 (Ala. Civ. App. 2005)(citations omitted.) In the instant case, S & S Trucking has alleged that Defendants Wright and Deas Insurance were advised of Plaintiff's desire to acquire insurance coverage for the trucks and trailers operated by Plaintiff, and also for "bobtail coverage", which would provide coverage for trailers and cargo when the trailer was not attached to the tractor, that Defendants agreed that the "bobtail coverage" was needed, that Defendants agreed to provide the coverage, that Defendants failed to provide the coverage, and that, as a result, Plaintiff suffered a loss after cargo that was on a trailer that was not attached to a tractor was stolen, and Plaintiff's claim for the cargo was denied. Although Defendants asserts that Plaintiff never requested such coverage, construing the facts in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has alleged facts sufficient to establish a negligence claim against Defendants Wright and Deas Insurance. <u>Bryan v. Lexington Ins. Co. And Orange Beach Ins. Agency</u>, 2006 U.S. Dist. LEXIS 53833, 2006 WL 2052524 at *23 (S.D. Ala., July 20, 2006)("Alabama law is clear that '[w]hen an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client and unjustifiable or negligently

fails to do so, he becomes liable for any damage resulting therefrom.")(citations omitted).

Defendant also asserts however that Plaintiff's negligence claim is barred due to the contributory negligence of S & S Trucking. Under Alabama law, contributory negligence is a complete defense to a claim based on negligence. <u>Kenellis</u>, 917 So.2d at 155. In <u>Kanellis</u>, the plaintiffs purchased an insurance policy which they believed covered the cost to repair or replace their Porsche vehicle, as well as depreciation of the vehicle. The Porsche was involved in an accident, and the plaintiffs filed suit after the insurer denied their claim for diminution in value. In rejecting the plaintiffs' claims, the Alabama appeals court held that in light of the clear language of the policy issued to the plaintiffs, "the record is susceptible only to the conclusion that, as a matter of law, the [plaintiffs] "put [themselves] in danger's way and had a "conscious appreciation of the danger" of suffering a monetary loss in the event of a collision involving the Porsche automobile resulting in a diminution of the value of the Porsche."); <u>See</u> <u>also</u> <u>Jones v. State Farm</u>, 2007 U.S. Dist. LEXIS 80894 (M.D. Ala. Oct. 30, 2007)(court held that even if insurer breached its duty to procure insurance, the plaintiff's contributory negligence precluded recovery as a matter of law. The plaintiffs put themselves in "dangers way" of suffering a loss because they are charged with knowledge of their policy and its

limits.)

Accordingly, this Court must determine whether S & S Trucking's wanton and negligence claims are barred because of Plaintiff's alleged contributory negligence. Under the circumstances of this case, the undersigned cannot conclude that Plaintiff's alleged contributory negligence bars its wanton and negligence claims as a matter of law. While Plaintiff has not alleged that S & S Trucking and its agents were illiterate and thus unable to read the policy, Plaintiff has alleged that the policy consisted of approximately 147 pages, that the policy was not received until a couple of days before the loss, that Defendants represented that "bobtail" coverage was included, and at Plaintiff's request, Defendants provided certificates of insurance for Plaintiff's cargo brokers which reflect that Plaintiff had automobile coverage and cargo coverage procured through Canal Insurance.

A review of the policy reflects that it consists of 147 pages. (Doc. 1-1, Ex. D) At page 79, the policy provides that "[w]e will pay for direct physical accidental 'loss' from any covered causes of 'loss' to 'covered cargo.' Covered causes of 'loss' means 'loss' for which you are legally liable while cargo is in your care, custody or control as a carrier. . . . Losses caused by or resulting in or from excluded causes of 'loss' in Section II are <u>not</u> covered by this insurance policy." The policy then lists nine

13

(9) categories of cargo not covered. Under category seven (7), the policy provides that "[c]argo on a 'scheduled vehicle' at any location for more than seventy-two (72) hours from the time the 'scheduled vehicle' arrived at that location. Under category eight (8), the policy provides that "Cargo at a 'scheduled location' for more than thirty (30) days from the time the cargo arrived at the 'scheduled location.'" (Id.)  Under a section entitled "Limit of Liability," the policy provides that "[t]he most we will pay in any one occurrence for 'loss' to cargo: 1. on a 'scheduled vehicle' is the Limit of Liability for that 'scheduled vehicle' shown on the Declaration Page; 2. at a 'scheduled location' is the Limit of Liability for that 'scheduled location' shown on the Declaration Page;..."(Id. at p. 80).  The policy also includes a section entitled "Definitions."  Some of the definitions included are as follows:

"'Scheduled location' means the physical location as described on the Declarations Page.....

"'Covered cargo' means cargo of others in transit under one of the following written documents issued by you: bill of leding, tariff or shipping receipt.  The cargo must be on a 'scheduled vehicle,' or in the actual process of being loaded onto a 'scheduled vehicle' or unloaded off of a 'scheduled vehicle' by the insured and within fifty (5) feet of the 'scheduled vehicle,' or at a 'scheduled location.'" (Id. at 80-81).

14

Page 122 of the policy is entitled "Motor Truck Cargo Coverage Declarations Changes." This page contains a section entitled "Item Two Description of Scheduled Vehicles," and it lists four vehicles, along with the limit of liability, the deductible and the premiums. There is also a section entitled "Description of Scheduled Locations"; however, it is blank. (Id. at p. 122).

Defendant asserts that S & S Trucking's failure to read the policy and timely raise any coverage concerns upon receipt of the policy constitutes negligence and bars Plaintiff's claim as a matter of law. The undersigned observes, as a preliminary matter, that the policy is lengthy, in excess of one hundred and forty pages. Further, Plaintiff has asserted that the policy was not received until a couple of days before the loss, that prior thereto, Defendants represented that "bobtail" coverage was included in the policy, and at Plaintiff's request, Defendants provided certificates of insurance for Plaintiff's cargo brokers which reflect that Plaintiff had vehicle coverage and cargo coverage procured through Canal Insurance. Although the issue of when Plaintiff actually received the policy is contested, in consideration of a motion for remand, the court must resolve all questions of fact in favor of the plaintiff. Legg, 428 F.3d at 1325. Construing the facts in favor of Plaintiff, the undersigned finds that the record does not establish that S & S was contributorily negligent as a matter of law where Plaintiff did not

15

receive the lengthy policy until a couple of days before the loss, and prior thereto, Defendants had represented that the policy included bobtail coverage, and Defendants had issued certificates of insurance which did not contradict their assertions, but instead reflected that S & S had cargo insurance. Accordingly, the undersigned finds that Plaintiff has a colorable cause of action against Defendants for wantonness and negligence. See Triggs, 154 F. 3d at 1287(requiring only a possibility of a claim, not certainty that the claim will succeed.); Poole v. American International Group, 2006 U.S. Dist. LEXIS 13418 (M.D. Ala. March 9, 2006)(court cannot say under the fraudulent joinder standard that there is no possibility that the plaintiff could establish any fraud claim against the resident defendants despite the defenses of statute of limitations and alleged inability to establish reasonable reliance.)

Defendants have failed to meet their burden of establishing fraudulent joinder by clear and convincing evidence. Therefore, this Court cannot disregard the citizenship of Defendants Wright and Deas Insurance for purposes of diversity of citizenship. Because complete diversity does not exist, this case should be remanded to the Circuit Court of Conecuh County, Alabama.

**IV. Conclusion**

Construing the removal statue strictly and resolving all doubts in favor of remand, in accordance with University of South

16

<u>Alabama</u>, 168 F.3d at 411, the court finds that Defendants have not established the propriety of removal under 28 U.S.C. § 1441, and have not established the existence of federal jurisdiction. Accordingly, the undersigned **RECOMMENDS** that the Motion to Remand this case to the Circuit Court of Conecuh County, Alabama be **GRANTED**.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **13th day of May, 2010.**

                                      **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14)** days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)( c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a

---

[4]The Court's Local Rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

Court of Appeals; only the district judge's order or judgment can be appealed.


2.  **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within fourteen (14)days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.  **<u>Transcript (applicable where proceedings tape recorded)</u>**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                             **/s/ SONJA F. BIVINS**
                                        **UNITED STATES MAGISTRATE JUDGE**